# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| NATESHA R. DAVIS,<br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 16-CV-00159-LRR<br><br>**REPORT AND RECOMMENDATION** |

Claimant, Natesha R. Davis (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant also filed a Title XVI application for supplemental security income which was also denied. Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court **affirm** the Commissioner's decision.

## *I.     BACKGROUND*

Claimant was born in 1967 and was 47 years old at the time of the ALJ's decision to deny benefits. Claimant completed limited schooling. (AR 28). Claimant filed her application for Social Security Disability Insurance and Supplemental Security Income benefits on October 29, 2012. (AR 17). Claimant asserted that her disability began December 31, 2009, at age 42, for impairments that include degenerative joint disease (right knee), mild scoliosis, mild obesity, major depressive disorder, and borderline intellectual functioning. (AR 17-20). The Social Security Administration denied the claimant's application initially and upon reconsideration. (AR 146-9, 150-4, 157-60,

161-4). Claimant timely filed a Request for Hearing, and a hearing was held on September 17, 2014, before the Administrative Law Judge (ALJ). On February 11, 2015, the ALJ determined that claimant was able to perform past relevant work as a store laborer. (AR 28). The ALJ further determined that there was other work the claimant could perform, such as folder and marker. (AR 29). As a result, the ALJ determined claimant was not disabled and was not entitled to benefits.

Claimant timely requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied review on May 31, 2016. (AR 1-6). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981. On August 3, 2016, claimant filed a complaint in this court. (Doc. 3).

## II.  *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir.

2007). First, the Commissioner will consider a claimant's work activity. If claimant is engaged in substantial gainful activity, then claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves significant mental or physical activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of claimant's physical and medical impairments. If the impairments are not severe, then claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." *(Id.)*. § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If

claimant can still do his/her past relevant work, then he/she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of claimant's physical ability to perform exertional tasks or, in other words, what claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). Claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *(Id.)*. If a claimant retains enough RFC to perform past relevant work, then claimant is not disabled. *(Id.)*. § 404.1520(a)(4)(iv).

Fifth, if claimant's RFC, as determined in Step Four, will not allow claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work claimant can do, given claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If claimant can make the adjustment, then the Commissioner will find claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 404.1545(a)(3). The burden of persuasion to prove disability remains on claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use

was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of claimant's limitations without the substance use. *(Id.)*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and claimant is not disabled. 20 C.F.R. § 404.1535.

### III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision.

At Step 1, the ALJ found claimant had not engaged in substantial gainful activity since December 31, 2009, the alleged date of onset of disability. Although claimant worked after that date, the ALJ concluded that work activity did not amount to gainful employment. (AR 19).

At Step 2, the ALJ determined claimant had the following severe impairments: degenerative joint disease (right knee), mild scoliosis, mild obesity, major depressive disorder, and borderline intellectual functioning. (AR 20). The ALJ acknowledged other impairments that were listed in the record, but found they did not cause significant limitation of functioning, or did not last for a continuous period of 12 months. (*Id.*).

At Step 3, the ALJ determined claimant did not have a physical or mental impairment or a combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *(AR 23-24)*. Because of this determination, disability could not be established based on medical facts alone. (20 C.F.R. Pt. 404.1520(d) and 416.920(d)). The ALJ found claimant had the following "paragraph B" criteria limitations: mild difficulties in activities of daily living; moderate difficulties in social functioning; moderate difficulties with concentration, persistence of pace, and no episodes of decompensation. (AR 21). The ALJ did not find any "paragraph C" criteria. (*Id.*).

At Step 4, the ALJ determined claimant's residual functional capacity. The ALJ found that "claimant has the residual functional capacity to perform light work" with the following restrictions:

> [Claimant] could only occasionally climb, balance, stoop, and crouch. She could not kneel or crawl. She is limited to performing simple, routine, repetitive tasks, with very few workplace changes. She could have occasional interaction with the supervisors. With respect to the public and coworkers, she can also have occasional interaction. However, the interaction should not be for the purposes of performing job tasks— essentially a solitary position. She could not work in a position that requires the reading of instructions, writing of reports, or requires math calculations. She could not work at a production-rate pace.

(AR 21). Based on this residual functional capacity, the ALJ determined claimant was able to perform past relevant work. (AR 28).

The ALJ made an alternative finding, at Step 5, based on expert testimony from a vocational expert, that claimant would be able to perform the following jobs: folder and marker. (AR 29). The ALJ therefore found claimant was not under a disability from December 31, 2009, through the date of the decision. (AR 29).

### IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal

on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject

to reversal simply because some evidence may support the opposite conclusion." (Internal citation omitted)).

## V. MEDICAL RECORDS REVIEW

Claimant had been treated or evaluated by the following providers: Dr. June Hillelson, internal medicine; Barbara Lips, Ph.D.; Dr. Robert Schultes, family medicine; and Dr. Harlan Stientjes. Claimant had been treated in the following medical facilities: Genesis West Medical Center; Community Healthcare, Inc.; Mercy Medical Center; His Hands Free Clinic; and the Abbe Center.

Dr. Hillelson performed a Michigan Disability Determination Evaluation on October 11, 2007, for back pain, leg pain, and foot problems. At that time, claimant's disability application showed that her complaints were subjective only without neurologic deficits on exam and normal gait. (AR 357).

At Community Health Care, Elizabeth Gudgel performed a pre-employment history and physical on June 6, 2012. Claimant had no active complaints and the physical and mental exam did not describe any abnormal findings. (AR 411).

Dr. Lips evaluated claimant on January 10, 2013, for a Disability Determination Psychological Evaluation. Dr. Lips concluded that claimant appeared unable to remember and understand even simple instructions, procedures, and locations at the time of the evaluation. Claimant appeared unable to maintain attention, concentration and pace in order to carry out instruction. She appeared unable to interact appropriately with supervisors, coworkers, and the public. She also appeared unable to exercise good judgment or to adjust to changes and the workplace. It appears unlikely that even with treatment, this would sufficiently change in the near future such that she could become employable. (AR 425-7).

Dr. Schultes wrote on behalf of claimant to Disability Determination Services on January 29, 2013. He wrote that claimant stated she could not work because of attitude problems and anger issues. He also wrote claimant stated she could not hear out of her left ear and it was hard for her to stand and walk due to leg pain. (AR 429). Dr. Schultes'

examination showed tenderness in both knees and decreased sensation in feet and hands, and he recommended a psychiatric evaluation. (AR 430).

On February 28, 2013, claimant had right knee X-ray that showed possible tendinopathy, left knee X-ray that did not show any abnormalities, and lumbar X-ray that showed mild osteoarthritic changes at L4-5. (AR 436-40). Claimant had repeat X-rays of bilateral knees on October 4, 2013; the right knee showed calcifications suggesting contusion and fat necrosis, and a small quadriceps insertion spur and the left knee showed prepatellar soft tissue swelling and a small quadriceps insertion spur.

Dr. Stientjes, a psychologist, performed a psychologic evaluation on May 13, 2013. (AR 447). He noted that claimant was not on any medication because her prescriptions had expired. The mental status exam that day found claimant; oriented to person, place, and time; could not read at a fourth grade level and had no recall; and claimant had difficulty following three-step commands. Dr. Stientjes wrote that claimant had major problems in understanding and remembering simple instructions and demonstrations. Dr. Stientjes opined that claimant would not be able to utilize any written prompts or directions effectively, and that carryover could be inconsistent from day to day. Dr. Stientjes felt that claimant's interactions with others was challenging and she most likely had avoidance issues because of fear of inadequacy. He also felt claimant's safety judgement was poor and change was threatening and she required considerable individual attention to get any reasonable response. (AR 450-451). Dr. Stientjes opined that claimant's symptoms were consistent with Major Depressive Disorder, and mild to moderate mental retardation. (AR 451).

On August 3, 2013, claimant was evaluated in the Mercy Medical Center Emergency Room for a left foot injury. No back pain was noted, and she was diagnosed with cellulitis, given antibiotics and discharged. (AR 460).

His Hands Medical Clinic filled out an Incapacity Report on January 2, 2014, stating that knee pain was preventing claimant from walking and also stated that claimant was expected to return to work in 3 months. Office visit notes from that day noted

bilateral knee pain, with pain being more pronounced on the right than the left. At His Hands Clinic, Dr. Pape, orthopedic surgeon, evaluated claimant for right leg pain on January 15, 2014, and diagnosed her with patellofemoral chondromalsia, pes bursitis, and tendonitis. On March 25, 2014, claimant was evaluated at His Hands Clinic and continued to complain of right knee pain. (AR 469-89).

Claimant was evaluated at the Abbe Center on April 30, 2014, where she described difficulty with social interactions, anger issues, and possible hallucinations regarding her son who died one year prior. The examiner, Brenda Keenan, LISW, noted flat affect and minimal reasoning and insight. Claimant was diagnosed with schizoaffective disorder and referred to a psychiatrist. At the Abbe Center on May 12, 2014, claimant was evaluated by Dr. Larry Richards, a psychiatrist, who diagnosed her with adjustment disorder with depressed mood. He started her on Viibryd, an antidepressant. Claimant had only one therapy session with Ms. Keenan on July 21, 2014, where focus was on her anger, depression and anxiety. (AR 496).

## VI. DISCUSSION

Claimant argues the ALJ's residual functional capacity assessment is flawed for two reasons:

1. The ALJ failed to evaluate properly the work-related limitations from the consultative psychologist, Dr. Barbara Lips. (Doc. 14, at 4).

2. The ALJ failed to evaluate properly the psychological evaluation of Dr. Stientjes. (Doc. 14, at 11).

I will address these arguments in turn below.

### A. *The ALJ's evaluation of the work-related limitations from consultative psychologist, Dr. Barbara Lips.*

Claimant argues the ALJ erred in his RFC assessment when he failed to properly evaluate the work-related limitations from consultative psychologist, Dr. Barbara Lips. (Doc. 14, at 4). An ALJ must give a treating physician's opinion controlling weight, but only if it is supported by medically acceptable clinical and laboratory diagnostic

techniques and is consistent with other medical evidence. *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007). An ALJ need not give any weight to a treating physician's opinions that a claimant is disabled as that is a conclusion reserved to the Commissioner to make. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (doctor's opinion that claimant is disabled involves issue reserved to Commissioner and is not the type of medical opinion to which Commissioner gives controlling weight).

The ALJ reviewed Dr. Lips' evaluations and concluded that Dr. Lips qualified most of her conclusions by stating what "appeared" to be the case. (AR 427). The ALJ was not confident that Dr. Lips had sufficient information to make her findings. (AR 24). The ALJ gave Dr. Lips' opinion little weight because the opinion was based on an incomplete interview and was unsupported by objective medical evidence. (AR 25). The ALJ determined that the limitations set forth by Dr. Lips were not supported by the objective medical records, including unremarkable mental status exams. (*Id.*). Dr. Lips' conclusions regarding claimant's inability to work were not given authority as they were not medical opinions. *See* 20 C.F.R. §§ 404.1527(d)(2) (3), 416.927(d)(2)-(3); *House*, 500 F.3d at 745.

I find the ALJ properly acted within his zone of choice in weighing the work-related limitations opined by consultative psychologist, Dr. Barbara Lips. The ALJ conducted an adequate analysis in the area of his residual functional capacity assessment even though his conclusion did not conform to that of Dr. Lips. (AR 834). The ALJ conducted an adequate analysis in the areas of his residual functional capacity assessment that did conform to the records as a whole. (AR 24). Ultimately, it is not for this Court to re-weigh the medical evidence or resolve conflicts between medical professionals. So long as the ALJ's analysis is reasonable, this Court cannot reverse the Commissioner's decision. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." (internal citation omitted)). I find there was

substantial evidence in the record as a whole for the ALJ to act within his zone of choice in assigning little weight to Dr. Lips' opinions. Therefore, I find the ALJ did not err in this regard, in the finding that the limitations from Dr. Lips were given little weight.

### B. The evaluation of the opinions of psychologist Dr. Stientjes.

After Dr. Stientjes' evaluation of claimant, Dr. Stientjes opined that claimant's "prospects of sustained competitive employment are nil." (AR 451). This opinion was based on Dr. Stientjes' evaluation diagnosing claimant as having mental retardation, with difficulty understanding and remembering simple instructions. (AR 450-1). Following Dr. Stientjes' report, Dr. Beverly Westra, a psychologist from the state agency, spoke to Dr. Stientjes' on the phone and informed him that in 2007, claimant had completed her own disability function report. (AR 112). Based on this new information, Dr. Stientjes conceded that claimant was exaggerating symptoms and was not a "trustworthy source of information," although Dr. Stientjes still held the opinion that claimant had no higher than Borderline Intellectual functioning. (AR 113).

The ALJ agrees that claimant had some physical and mental limitations; however, these limitations do not rise to the level that would qualify as a disabling condition under the definitions of disability in the Social Security Act. The ALJ based this on claimant's inconsistencies in reporting her symptoms as compared to the record as a whole. Thus, the ALJ concluded that the claimant was not credible in her reporting of subjective symptoms. (AR 27). The ALJ therefore assigned little weight to Dr. Stientjes' opinions. (AR 26).

In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: (1) claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss

every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." *Id*. (citing *Masterson*, 363 F.3d at 738; *Cline*, 939 F.2d at 565). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to make." *Id*. (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

Here, the ALJ did not discount claimant's subjective complaints solely because they were not supported by objective medical evidence. Consistent with *Polaski*, the ALJ weighed the record and I find that the ALJ adequately detailed inconsistencies found in the record. The ALJ identified instances where claimant's testimony contradicted the record.

The ALJ specifically referred to inconsistencies enumerated by Dr. Westra when Dr. Westra concludes claimant's "credibility is completely eroded." (AR 119-20). These inconsistencies include: claimant completed her disability application by phone without any noted difficulties; claimant failed to report any mental disability in her 2007 disability application; claimant prepared her own meals; shopped for herself, performed household chores, and used public transportation independently; attended church; and handled her own finances. (AR 27). The level at which claimant filled out her disability report in 2007 was well above the level of ability reported by Dr. Stientjes when he noted that claimant "was unable to read more than a few words" and had "no ability in written expression." (*Id*.). Claimant gave a detailed history in her consultative exam with Dr.

Schultes in 2013, and was able to communicate sufficiently well in her appointments with her health care providers. (*Id.*). Claimant was agitated and disruptive during her examination with Dr. Lips, but was largely unresponsive during her exam with Dr. Stientjes. This inconsistency suggests that there was exaggeration of symptoms, at least at for the interactions with Dr. Stientjes. (Id.).

The ALJ identified additional inconsistencies in claimant's testimony including that she had difficulty getting to her counselling appointments, however she had friends who drive her to errands and to the hearing. At the hearing, claimant had no difficulty following the proceedings and answered questions appropriately; this is inconsistent with her testimony that she had difficulty hearing and understanding and often needs friends to assist her during conversations. (AR 27-28). This is also inconsistent with claimant's documented level of mental ability during Dr. Stientjes' evaluation. Finally, the symptoms reported by claimant during the consultative examinations are not consistent with the mental status examinations in the other records. (AR 28). For these reasons, the ALJ appropriately assigned little weight to the opinion of Dr. Stientjes.

Four non-examining source opinions that were consistent with the ALJ's determination are contained in the records. (AR 86, 100, 114, 117). Phillip Laughlin, Ph.D., a non-examining source, evaluated the records and conducted phone interviews with claimant and claimant's significant other. Dr. Laughlin's conclusion on January 23, 2013, was that "the evidence in [the] file is extremely inconsistent and credibility challenges predominate." (AR 86). Dr. Laura Griffith, an additional non-examining source concluded on March 13, 2013, that claimant had impairments related to obesity, right knee degenerative changes and mild lumbar scoliosis, and concluded the file did not have sufficient evidence for a medical determination. (AR 100). Dr. Westra concluded, on August 12, 2013, based on records and phone interviews with claimant and Dr. Stientjes, that there was insufficient evidence for an opinion regarding medical disability and that claimant was not credible regarding her subjective complaints. (AR 114). Upon reconsideration, non-examining source Dr. Jan Hunter agreed with prior determinations

14

and opined that claimant was capable of performing work that did not involve lifting or work involving ladders. (AR 117-122). Although non-examining sources, the ALJ can assign great weight to these opinions as they relied heavily on the records from treating providers, were consistent with the records as a whole, and considered claimant's credibility.

The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. *Pearsall*, 274 F.3d at 1218. Accordingly, a court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Here, the ALJ appropriately considered the record in determining the credibility of claimant and accordingly the weight assigned to opinions that were largely based on subjective complaints and functional testing based on claimant's effort.

The opinions of non-examining state agency consulting physicians normally cannot constitute "substantial evidence" in support of an ALJ's decision when those opinions directly conflict with the opinions of treating or examining sources. *See e.g.*, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) ("The opinions of non-treating practitioners who have attempted to evaluate claimant without examination do not normally constitute substantial evidence on the record as a whole.") (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *Dixon v. Barnhart*, 324 F.3d 997, 1002-03 (8th Cir. 2003) (holding that "[g]iven the contradicting recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work.") (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). When, however, assessments of state agency medical consultants are consistent with other medical evidence in the record, those assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08. Indeed, an

ALJ may rely on a state agency consulting physician's opinion even when that opinion conflicts with the opinion of a treating physician. *See Ponder v. Colvin*, 770 F.3d 1190, 1194-95 (8th Cir. 2014) (concluding that three non-examining consulting physician's opinions trumped a treating physician's opinion). An ALJ may ultimately base an RFC assessment on medical evidence, even in the absence of any medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2013). It is the ALJ's duty to weigh the medical evidence. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

Here, I find the ALJ's residual functional capacity assessment is supported by the required substantial medical evidence, and the ALJ gave appropriate weight to the medical opinions and reconciliation of those opinions with the medical records. *See Fentress v. Berryhill*, 854 F.3d 1016, 1017 (8th Cir. 2017)(holding that a court will uphold a decision to deny benefits if that decision is supported by substantial evidence in the record as a whole). In my own review of the administrative and medical records, I find that claimant's interactions with both Dr. Lips and Dr. Stientjes are inconsistent with the other records and level of claimant's functioning. Additionally, I find that the records as a whole do not describe physical or mental limitations that would support a finding of disability as defined in 42 U.S.C. § 423(d)(2)(A). *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (holding ALJ's adverse credibility determination for was supported by substantial evidence, including the ALJ's finding that claimant's alleged limitations were inconsistent with claimant's daily activities). I find there was substantial evidence on the record as a whole to support the ALJ's decision to discount the weight given to claimant's description of the intensity, persistence, and functionally limiting effects of her impairments.

Because Dr. Stientjes' opinion was based significantly on claimant's subjective statements and was otherwise inconsistent with the rest of the medical record, I therefore conclude that the ALJ did not err in discounting the weight afforded to Dr. Stientjes' opinion.

## VII. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the ALJ's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 13th day of July, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa